UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KESHA GREEN, <br><br> Plaintiff, <br><br> vs. <br><br> IRON WORKERS LOCAL 11, JOHN DOES 1-10 (said names being fictitious, real names unknown) and ABC ENTITIES 1-10 (said names being fictitious, real names unknown), <br><br> Defendant(s) | Civil Action No.: <br><br><br> CIVIL ACTION <br><br> **COMPLAINT WITH JURY DEMAND** |

Plaintiff, KESHA GREEN ("Plaintiff"), residing at 670 South 16th Street, Newark, New Jersey by and through her undersigned counsel, files this Complaint and Jury Demand against Defendants IRON WORKERS LOCAL 11, JOHN DOES 1-10 (said names being fictitious, real names unknown) and ABC ENTITIES 1-10 (said names being fictitious, real names unknown), hereby allege as follows:

**NATURE OF THE CLAIMS**

1. This is an action for monetary relief to redress Defendants' unlawful employment practices against Plaintiff, including its discriminatory treatment and harassment of Plaintiff due to her race and its unlawful retaliation against her after she complained about unlawful discrimination in the workplace in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII").

**JURISDICTIONAL STATEMENT**

2.  The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII.

3.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

**ADMINISTRATIVE PROCEDURES**

4.  Prior to the filing of this Complaint, Plaintiff filed a charge of discrimination jointly with the Department of Law & public Safety Division on Civil Rights ("DCR") and with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII. Plaintiff's EEOC charges arise out of many of the same facts alleged herein.

5.  On or about February 16, 2023, Plaintiff received the notice of right to sue issued by the EEOC in connection with the previously filed charge of discrimination. This Complaint has been filed within 90 days of Plaintiff's receipt of her notice of right to sue from the EEOC. Additionally, the EEOC adopted the DCR finding of Probable cause.

6.  Any and all prerequisites to the filing of this suit have been met.

**PARTIES**

7.  Plaintiff is an African American female residing in Newark, New Jersey and is a member of Defendant IRON WORKERS LOCAL 11. At all relevant times, Plaintiff was a resident of the State of New Jersey and met the definition of an "employee" under all applicable statutes at the time of her employment.

8.   Upon information and belief, Defendant IRON WORKERS LOCAL 11, is a union in the State of New Jersey, which had the Plaintiff in its employ during the relevant time periods herein. Defendant maintained a hiring hall and is covered by Title VII in its capacity as a union employer who operated a hiring hall and referral system to assign members to employment. At all relevant times, Defendant IRON WORKERS LOCAL 11 was covered under Title VII as a labor organization and meets the definition of an "employer" under all Title VII.

9.   At all times relevant hereto, JOHN DOES 1-10 (said names being fictitious, real names unknown) are fictitious names used to identify those individuals which names are presently unknown that engaged in wrongful acts outlined herein and their identities are presently unknown.

10. At all times relevant hereto, ABC ENTITIES 1-10 (said names being fictitious, real names unknown) are fictitious names used to identify those companies which names are presently unknown that engaged in wrongful acts outlined herein and their identities are presently unknown.

## STATEMENT OF FACTS

11. Plaintiff is an African American female and member of Defendant's union in accordance with Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et. Seq.

12. In or around January 1998, Plaintiff became a member of the Defendant's Union as an apprentice.

13. Plaintiff's labor contract contained a union referral process that gave the Defendant the power to assign members to jobs.

14. In January 2002, Plaintiff completed her apprenticeship and became a journeyperson with full Union rights and protections. Plaintiff's status as a journeyperson meant that she was qualified to install iron and steel to form and support buildings, bridges, and roads.

15. Defendant engaged in discriminatory job assignments and referral of Plaintiff throughout her career. These poor assignments and referrals were repeated, continual and directly related to her race.

16. On or about September 7, 2018, Plaintiff was referred out to a job that lasted less than two weeks, while that same day white members who signed the out of workbook after Plaintiff were referred to the Bayonne Bridge project, a long-term project.

17. Similarly, on or about September 19, 2018, Plaintiff was referred out to a job of less than two weeks, while that same day other members who signed the out-of-work book after her were assigned to other jobs, including the Bayonne Bridge project.

18. On or about April 15, 2019, Plaintiff filed a Verified Complaint with the New Jersey Division on Civil Rights (DCR) alleging that Defendant subjected her to a hostile work environment and differential treatment based on her race, and retaliated against her after she engaged in LAD protected activity, in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-12(b) and N.J.S.A. 10:5-12(d). The charge was jointly filed with the EEOC.

19. The NJDCR matter is still pending - docket number EG02WB-67431  and the DCR is prosecuting  Plaintiff's state law claims.

20. In the Verified Complaint filed with the DCR, Plaintiff alleged that since she became a journeyperson, Defendant's Business Manager Ray Woodall consistently assigned her and other Black union members to short-term jobs that lasted only one or two days while assigning steady, longer-term work to white union members. This discrimination referral occurred over many years prior.

21. Plaintiff told the DCR that the use of racial epithets by the Business Manager was offensive and disconcerting to her, as she explained to Woodall when she confronted him about his

comments, stating, "It just made me feel like is that how he feel about me? Is that how he look at me? Is that how he see me?

22. The DCR found no evidence that Defendant had in place a policy that prohibits discrimination or harassment, or that it has a mechanism in place to receive and respond to complaints of unlawful discrimination.

23. Despite requests from the DCR, Defendant did not provide a written policy that addresses complaints of discrimination by its members. Furthermore, Defendant's Business Manager, Mr. Woodall – the person accused of using racial slurs - stated that if he witnessed the use of racial slurs, he would merely "instruct the individual not to use such language."

24. The investigation found that Plaintiff spoke to Mr. Woodall about his comments and declined to provide him with the video in or around early February 2019. The DCR reviewed records that showed that in the months prior - specifically, between October 2018 and early-January 2019, Plaintiff was primarily assigned steady, full-time work, and typically worked 40 hours per week or more.

25. However, within weeks following Plaintiff's interaction with Mr. Woodall, he assigned Plaintiff primarily to shorter term work at different companies where she worked less than 25 hours per week with few exceptions.

26. Plaintiff also alleged that Mr. Woodall used racial slurs to refer to Black union members. In support of that allegation, Plaintiff claimed that she came into possession of video footage where Mr. Woodall could be heard referring to a Black Union member as a "nigger" and a "shine," and to a non-Black Union member as a "white shine."

27. Plaintiff further alleged that in or around February 2019, Mr. Woodall reduced her work assignments and referred her only short-term work in retaliation for her refusal to provide him with a copy of the video recording.

28. Following an investigation, on or about August 16, 2022, the DCR found probable cause to credit the Plaintiff's allegations of differential treatment based on race, probable cause to support Plaintiff's allegations of a hostile environment based on race, and probable cause to support Plaintiff's allegations of unlawful reprisal.

29. On or about February 16, 2023, Plaintiff obtained the Right to Sue Letter for Charge #17E-2019-00177.

30. Plaintiff repeatedly complained about her discriminatory treatment to no avail. Plaintiff even called the international Union and was told there was nothing that could be done for her absent the commission of a crime. After her complaints, Plaintiff was harassed and retaliated against through continued denial of assignments and referrals.

31. At all times, Defendant harbored racial animus that was evinced through racial slurs and language and poor job assignments and referrals.

### FIRST CAUSE OF ACTION

VIOLATION OF TITLE VII—RACE DISCRIMINATION

32. Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

33. Plaintiff's labor contract contained a union referral process that gave the Defendant the power to assign members to jobs.

34. During the course of Plaintiff's employment, the Defendant, by and through its agents and employees, discriminated against the Plaintiff in the terms, conditions, and privileges of

employment in various ways, in substantial part because of her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et. Seq.

35. The discriminatory conduct directed towards Plaintiff by Defendant were unwelcome, sufficiently severe or pervasive, detrimentally affected Plaintiff, was viewed as subjective hostile and abusive, and would be viewed as objectively hostile or abusive to a reasonable person.

36. Plaintiff complained to her supervisors and spoke with Defendant's Business Manager Ray Woodall about the discrimination and harassment, and Defendant IRON WORKERS LOCAL 11 had actual or constructive knowledge of the ongoing discrimination and harassment.

37. The DCR issued a determination letter finding probable cause to credit the Plaintiff's allegations of differential treatment based on race, probable cause to support Plaintiff's allegations of a hostile environment based on race, and probable cause to support Plaintiff's allegations of unlawful reprisal against Defendant IRON WORKERS LOCAL 11.

38. Defendant IRON WORKERS LOCAL 11 failed to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment of Plaintiff.

39. Defendants IRON WORKERS LOCAL 11, JOHN DOES 1-10 (said names being fictitious, real names unknown) and ABC ENTITIES 1-10 (said names being fictitious, real names unknown), discriminated against Plaintiff on the basis of her race in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

### SECOND CAUSE OF ACTION

HARRASSMENT IN VIOLATION OF TITLE VII BASED ON RACE

40. Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

41. During Plaintiff's employment, the Defendant, by and through its agents and employees, harassed Plaintiff in the terms, conditions, and privileges of employment in various ways, in substantial part because of her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et. Seq.

42. Defendant allowed the regular use of racial slurs about Plaintiff and African Americans in general. Defendant failed to take preventative or corrective action to stop the harassment despite these slurs being repeated around Plaintiff.

43. As a direct and proximate result of Defendant IRON WORKERS LOCAL 11's unlawful harassment in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

44. Defendant IRON WORKERS LOCAL 11's unlawful harassing conduct constitutes a willful and wanton violation of Title VII, was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

### THIRD CAUSE OF ACTION

RETALIATION IN VIOLATION OF TITLE VII BASED ON RACE

45. Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

46. Defendant IRON WORKERS LOCAL 11 has violated Title VII by subjecting Plaintiff to retaliation for her protected complaints and opposition to Defendant's discriminatory behavior on the basis of race by, *inter alia*, reducing her work assignments and referred her only short-term work in retaliation for her complaints to Defendant about the racial comments.

47. As a direct and proximate result of Defendant IRON WORKERS LOCAL 11's unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

48. As a direct and proximate result of Defendant IRON WORKERS LOCAL 11's unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

49. Defendant IRON WORKERS LOCAL 11's unlawful retaliatory conduct constitutes a willful and wanton violation of Title VII, was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendant, containing the following relief:

A.  An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

B.  An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including,

but not limited to, compensation for her severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

C. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment;

D. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

E. An award of punitive damages;

F. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

G. Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues.

VLASAC & SHMARUK, LLC

By: ___*/s/ David E. Cassidy, Esq.*___
DAVID E. CASSIDY, ESQ.
NJ Attorney ID #024061996
485B Route 1 South, Suite 120
Iselin, NJ  08830
(732)494-3600
(732) 494-3601
Email: dcassidy@vslaws.com
Attorneys for Plaintiff

Dated:  March 31, 2023