UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KESHA GREEN,**<br><br>Plaintiff,<br><br>v.<br><br>**IRON WORKERS LOCAL 11,**<br><br>Defendant. | **Civil Action No. 23-1824 (JKS)**<br><br>**OPINION AND ORDER** |

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on a motion by Plaintiff Kesha Green ("Plaintiff") pursuant to Federal Rule of Civil Procedure 37 seeking to compel the deposition of Regina Hertzig, Esq. ("Hertzig"), counsel in this matter for Defendant Iron Workers Local 11 (the "Union"). Dkt. No. 42. The Union opposes Plaintiff's motion. Dkt. No. 43. Plaintiff replied. Dkt. No. 44.[1] The Union filed a sur-reply in opposition. Dkt. No. 48. The Court has carefully considered the relevant submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's motion [Dkt. No. 42] is **DENIED**.

**I.    BACKGROUND**

Plaintiff Kesha Green ("Plaintiff") filed her Complaint in this action on March 31, 2023. Dkt. No. 1 ("Compl.") Plaintiff, a member of Defendant Iron Workers Local 11 (the "Union"), is African American and resides in Newark, New Jersey. *Id.* ¶ 7. Plaintiff became a member of the

---

[1] Plaintiff filed a reply in violation of Local Civil Rules 7.1(d)(3) and 37.1(b)(3), which expressly prohibit the filing of reply papers for discovery motions filed under Local Civil Rule 37.1(b)(3) absent permission from the Court. Plaintiff did not seek "permission of the Magistrate Judge" to file her reply. *See* L. Civ. R. 37.1(b)(3). The Union requested permission to file a brief sur-reply in opposition, which the Court allowed. *See* Dkt. No. 47. Accordingly, the Court will consider both Plaintiff's reply and Defendant's sur-reply.

Union in January of 1998 and served as an apprentice until January of 2002, when she became a journeyperson. *Id.* ¶¶ 12, 14. A journeyperson is a union member qualified to "install iron and steel to form and support buildings, bridges, and roads." *Id.* ¶ 14.

The crux of Plaintiff's Complaint is that, "throughout her career," the Union "engaged in discriminatory job assignments and referral[s]" which were "directly related to her race." *Id.* ¶ 15. In September of 2018, Plaintiff "was referred out to [two] job[s] that lasted less than two weeks." *Id.* ¶¶ 16-17. "[W]hite [Union] members" were contemporaneously assigned to a "long-term project," the Bayonne Bridge project. *Id.* The Union's Business Manager, Ray Woodall ("Woodall"), was directly responsible for assigning jobs to Plaintiff. *Id.* ¶ 20; *see also id.* ¶ 13. Woodall allegedly used "racial epithets" in reference to Black union members and exhibited other "offensive and disconcerting" behavior. *Id.* ¶ 21, *see also id.* ¶ 26. Plaintiff "confronted" Woodall about his conduct in or around February 2019. *Id.* ¶ 21. Following her interaction with Woodall, Plaintiff continued to receive unfavored, short-term jobs and claims to have worked less than twenty-five hours weekly. *Id.* ¶ 25.

On or about April 15, 2019, Plaintiff filed a Verified Complaint with the New Jersey Division on Civil Rights ("DCR") (the "DCR Action"), alleging hostile work environment, differential treatment based on race, and retaliation in violation of the New Jersey Law Against Discrimination ("NJLAD"). *Id.* ¶ 18. Plaintiff's DCR Complaint was jointly filed with the U.S. Equal Employment Opportunity Commission ("EEOC") (the "EEOC Action"). *Id.* Plaintiff obtained a Right to Sue Letter from DCR on or about February 16, 2023. *Id.* ¶ 29. Thereafter, Plaintiff filed a complaint in this Court, asserting claims against the Union for race discrimination, harassment, and retaliation under Title VII, 42 U.S.C. § 2000(e), *et seq. See generally id.* Both the DCR and EEOC Actions were pending when this action was filed. *Id.* ¶ 19.

**A. Plaintiff Moves to Amend the Complaint and Seeks to Compel the Deposition of Regina Hertzig, Esq.—the Union's Counsel**

On August 20, 2024, Plaintiff filed, via letter, a motion to amend the Complaint, seeking to add an "equivalent" state law claim for negligent infliction of emotional distress, and claims of discrimination, harassment, and retaliation under the NJLAD. Dkt. No. 31-1.[2] The Court directed Plaintiff to file a formal motion to amend by September 13, 2024, and Plaintiff did so, on September 4, 2024. *See* Dkt. Nos. 32-33. Plaintiff argues that leave to amend is proper pursuant to Federal of Civil Procedure Rule 15 because her NJLAD claims are the state-law equivalent of her federal Title VII claims and derive from the same underlying conduct. Dkt. No. 33 at p. 4. Plaintiff further asserts that the proposed NJLAD claims would not require additional discovery or otherwise burden Defendant. *Id.*

Several days later, on September 19, 2024, the Union filed a letter requesting additional time to respond to Plaintff's motion to amend. *See* Dkt. No. 34. The Union's extension request was made after Plaintiff's counsel named the Union's counsel, Regina Hertzig, Esq. ("Hertzig"), as a fact witness and requested the deposition of Hertzig. *Id.*; *see also* Dkt. No. 38 at p. 1. The Union requested additional time to respond to Plaintiff's motion to amend to investigate "issues concerning [Cleary, Josem & Trigiani LLP's ("CJT")] continued ability to represent the Defendant." Dkt. No. 34 at p.1. Plaintiff's counsel opposed the Union's extension request and accused the Union of engaging in a pretextual attempt to prolong discovery, claiming that the deposition of Hertzig "should come as no surprise" to Defendant. *See* Dkt. No. 35. During a telephonic status conference with the parties on October 2, 2024, Plaintiff disclosed to the Court

---

[2] On January 26, 2024, Plaintiff's former counsel, David E. Cassidy, Esq., filed a letter advising the Court that "the DCR would not be pursuing individual damages on behalf of Plaintiff." Dkt. No. 19 at 2. As such, Mr. Cassidy sought to preserve Plaintiff's right to amend, arguing that "Plaintiff should have the right to amend her Complaint to add corresponding state law claims under the NJLAD." *Id.*

that she would seek the deposition of Hertzig. As such, the Court administratively terminated Plaintiff's motion to amend and directed Plaintiff to file a motion for permission to depose Hertzig. Dkt. No. 41.

On October 16, 2024, Plaintiff filed a motion seeking to compel the deposition of Hertzig. Dkt. No. 42 ("Pl.'s Moving Br."). The Union filed an opposition on October 30, 2024. Dkt No. 43 ("Def.'s Opp'n Br."). Plaintiff filed an improper reply on November 6, 2024, and the Union filed, with the Court's permission, a brief sur-reply in opposition on November 13, 2024. Dkt. No. 48. Plaintiff's principal argument is that the deposition of Hertzig is appropriate because Hertzig was deposed as a fact witness in an unrelated Superior Court of New Jersey, Essex County case, *Torppey v. Ironworkers L. 11*, Civ. A. No. ESX-L-419-19 ("*Torppey*").

**B. Hertzig's Involvement in *Torppey***

In *Torppey*, the former Financial Secretary and Business Agent of the Iron Workers International (the "International"), Brett Torppey ("Torppey"), filed suit against the Union and Woodall, alleging claims of sexual assault, retaliation, and hostile work environment. Pl.'s Moving Br. at p. 4; *see* Dkt. No. 42-1 ("Hertzig Dep. Tr.") 8:11-14; 13:8-17. Hertzig's firm, CJT, was hired by the International to investigate the allegations raised by Torppey. Hertzig Dep. Tr. 16:7-10.[3] Hertzig, in particular, was responsible for investigating Torppey's complaints concerning Eric Dean, the President of the International. *Id.* 23:6-9.

---

[3] The International and the Union are separate legal entities, operating somewhat like "a franchisor and franchisee" relationship. Hertzig Dep. Tr. 14:22-24; 15:14-20. The International was not Torppey's employer and did not have the ability to hire, fire or discipline employees of the Union. *Id.* 24:23-25:2. Hertzig always represented the International in connection with the *Torppey* matter, not the Union, and did not "shar[e] [her] findings of the investigation with anyone at the [Union]." *Id.* 22:12-14; 23:15-18.

4

Hertzig was ultimately deposed as a fact witnes in *Torppey*, resulting from her investigatory role on behalf of the International. Hertzig's deposition revealed the following information which Plaintiff hopes to revisit in this action. During CJT's investigation of Torppey's claims, Hertzig interviewed Torppey and listened to a tape of Woodall "impersonating a black person." *Id.* 36:14-19; 110:4-6.[4] In 2018, CJT created an Anti-Discrimination and Non-Retaliation Policy for the Union (the "Policy"). *Id.* 22:15-24. Hertzig was the principal drafter of the Policy, and therein was listed as a point of contact for Union members to lodge grievances they believed "cannot be handled by the president." *Id.* 56:9-11; 60:12-18. If Union members were to complain to Hertzig under the Policy, it was her understanding that she would "investigat[e]" whether a violation of the Policy occurred. *Id.* 60:21-24. Relevant here, Hertzig testified that she had served as counsel to the Union in other matters brought by Plaintiff against the Union, including a National Labor Relations Board ("NLRB") case (the "NLRB Matter") and a separate, earlier DCR case. *Id.* 18:24-19:11. The NLRB Matter settled, but not before a hearing was held. *Id.* 19:7-14. Both Plaintiff and Torppey testified at the NLRB hearing, and Hertzig was the attorney who questioned them. *Id.* 19:15-20:1.

Based on the foregoing, Plaintiff argues that Hertzig's testimony in *Torppey* "go[es] directly to the heart of the instant matter" and therefore provides a basis under Rule 37(a) for compelling Hertzig's deposition. Pl.'s Moving Br. at p. 4. Plaintiff does not go into detail on the information she would seek from Hertzig at her deposition. Instead, Plaintiff offers only that she seeks information regarding Hertzig's knowledge of "complaints made by Plaintiff, [and] also other Local 11 members." *Id.* Such information, Plaintiff avers, would ultimately prove that the

---

[4] Hertzig never spoke directly with Woodall. *Id.* 109:24. An interview of Woodall was conducted by Joe Cleary, Esq., Hertzig's partner. *Id.* 36:20-25.

5

Union was on constructive notice of the alleged discriminatory conduct and shed light on the alleged actions taken by the Union in response to Union members' complaints. *Id.*

The Union does not contest that Hertzig served as an investigator and was deposed in *Torppey*. Def.'s Opp'n Br. at p. 10. However, the Union argues that, unlike in *Torppey*, Hertzig did not take on an investigatory role concerning Plaintiff's claims here. *Id.* at pp 10-13. Furthermore, "based on the relevant case law, it is clearly [Plaintiff's] burden to demonstrate the need to depose Hertzig." *Id.* at p. 1. According to the Union, Plaintiff's "cursory assertions," "misstate[ments] [of] the record," and failure to identify "with specificity why Hertzig is the sole source of the information" are insufficient to compel the deposition of Hertzig. *Id.* at p. 2.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 37 concerns motions to compel discovery and provides that "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery," including a deposition. Fed. R. Civ. P. 37(a)(1); *see also SAJ Distribs., Inc. v. Sandoz, Inc.*, No. 8-1866, 2008 WL 2668953, at *2 (D.N.J. June 27, 2008). The discovery sought must fall within the scope of proper discovery under Rule 26.

Rule 26 provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Courts construe this rule liberally, "creating a broad range for discovery which would 'encompass any matter that bears on, or that reasonably could lead to other matter

6

that could bear on, any issue that is or may be in the case.'" *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "The party seeking discovery has the burden of showing that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver*, 192 F.R.D at 159. While the scope of discovery under the Federal Rules is broad, it has "ultimate and necessary boundaries." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Specifically, Rule 26(b)(2)(C) provides that "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule" when the court determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

The Federal Rules of Civil Procedure do not categorically prohibit the deposition of opposing counsel. *See* Fed. R. Civ. P 30(a) (permitting deposition of "any person," including attorneys). "In cases where the attorney's conduct itself is the basis of a claim or defense, there is little doubt that the attorney may be examined as any other witness." *Johnston Dev. Grp., Inc. v. Carpenters L. Union No. 1578*, 130 F.R.D. 348, 352 (D.N.J. 1990). Yet, "the general rule is that the deposition of counsel to an adversary is disfavored." *In re Plastics Additives Antitr. Litig.*, No. 3-2038, 2005 WL 8149514, at *3 (E.D. Pa. Aug. 9, 2005) (citing *United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 185 (2nd Cir. 1991) ("depositions of opposing counsel are disfavored"); *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327-1328 (8th Cir. 1987) (adopting policy against

permitting party to depose trial counsel of adversarial party, except in limited situations) (additional citations omitted)).

Not surprisingly, courts "take great care" in analyzing whether to permit the deposition of adverse counsel. *Mondis Tech. Ltd. v. LG Elecs., Inc.*, No. 15-4431, 2017 WL 4155121, at *2 (D.N.J. Sept. 19, 2017). This is especially true where the subject matter of the deposition is likely to be heavily intertwined with privileged or confidential information. *Johnston*, 130 F.R.D. at 352 (citing *In re Arthur Teacher's Franchisee Litig.*, 92 F.R.D. 429 (E.D. Pa. 1981)). In the District of New Jersey, numerous courts considering a request to depose opposing counsel have applied the three-factor test set forth in *Shelton v. American Motors Corporation*, 805 F.2d 1323 (8th Cir. 1986). *See Patrick v. Equifax Info. Servs., LLC*, No. 23-4092, 2024 WL 4404187, at *4 (D.N.J. Oct. 3, 2024) (collecting cases).[5]

"There are three factors that must be satisfied in determining whether to depose opposing counsel: '(1) no other means exist to obtain the information, (2) the information sought is relevant and non-privileged, and (3) the information sought is crucial to the preparation of the case.'" *Mondis Tech. Ltd.*, 2017 WL 4155121, at *2 (quoting *Stepanski v. Sun Microsystems, Inc.*, No. 10-2700, 2011 WL 8990579, at *15 (D.N.J. Dec. 9, 2011), *report and recommendation adopted*, No. 10–2700, 2012 WL 3945911 (D.N.J. Sept. 10, 2012) (citing *Shelton*, 805 F.2d at 1327)). *Shelton* places the burden of proof on the party seeking the deposition of opposing counsel. *United States ex rel. Salomon v. Wolff*, No. 17-5456, 2022 WL 989317, at *2 (D.N.J. March 23, 2022), *aff'd*, No. 17-5456, 2023 WL 6058833 (D.N.J. Sept. 18, 2023). Despite upending Rule 26's presumption in favor of discovery, the *Shelton* rule was established to "guard against the 'harassing practice of

---

[5] The Union argues, and Plaintiff does contest in her reply, that the *Shelton* standard applies. *See* Dkt. Nos. 43 at pp. 3-5; Dkt. No. 44 (Plaintiff's improper reply).

8

deposing opposing counsel . . . [which] prolongs and increases the cost of litigation, demeans the profession, and constitutes an abuse of the discovery process.'" *Patrick*, 2024 WL 4404187, at *4 (quoting *Pamida, Inc. v. V.E.S. Originals, Inc.*, 281 F.3d 726, 729-30 (8th Cir. 2002)).

### III.    DISCUSSION

The Court begins by addressing the first *Shelton* factor, which requires Plaintiff to demonstrate that no other means exist to obtain the information sought from Hertzig. Where the information sought can be readily obtained from other sources, this factor will not support the deposition of opposing counsel. *See Patrick*, 2024 WL 4404187, at *5 (citing *Salomon*, 2022 WL 989317, at *4; *Mondis Tech. Ltd.*, 2017 WL 4155121, at *3).

As stated, Plaintiff's primary basis for moving to compel the deposition of Hertzig is because Hertzig was deposed as a fact witness in *Torppey*—a similar, but unrelated litigation. Herzig's deposition in *Torppey* revealed that she was the principal author of the Union's Non-Discrimination and Non-Retaliation Policy. Thereunder, Hertzig is listed as a point of contact for employee grievances. Hertzig investigated Torppey's claims of sexual assault, retaliation, and hostile work environment against the Union. Hertzig also questioned Plaintiff in connection with the NLRB Matter. Based on these facts, Plaintiff argues that the deposition of Hertzig is necessary because Hertzig might reveal "significant relevant knowledge of complaints made by Plaintiff, [and] other Local 11 members." Pl.'s Moving Br. at p. 4. The Union argues that Plaintiff has not met her burden under *Shelton* and, therefore, asks this Court to deny Plaintiff's request to depose Hertzig. *See generally* Def.'s Opp'n Br.

The Court agrees with the Union, and finds that Plaintiff can readily obtain the information she seeks from sources other than Hertzig. Plaintiff is "armed with hundreds of pages of information on Hertzig's involvement [in *Torppey*]." *Id.* at p. 12 Documents from the *Torppey*

9

litigation were produced in the DCR Action and, in turn, were produced in discovery in this litigation. *Id.* At a minimum, Plaintiff is in possession of Hertzig's 161-page deposition transcript from *Torppey,* which she attaches in full to the present motion. *See* Dkt. No. 42-1. Plaintiff is also in possession of a November 25, 2020 certification of Hertzig "detailing the extent of her involvement in [the Torppey] investigation." Def.'s Opp'n Br. at p. 11. "Several memorandums [sic] authored by Hertzig . . . concerning the results of her investigation" were included in that certification and produced to Plaintiff. *Id.*[6] Plaintiff also subpoenaed the attorney-of-record for *Torppey*, who apparently provided further discovery. *Id.* Additional information concerning *Torppey* is available on the public docket. *Id.* Therefore, it appears that any information which Hertzig might reveal is available to Plaintiff through other, less intrusive means.

There is another source from which Plaintiff may obtain the information she seeks from Hertzig—herself. Plaintiff has firsthand knowledge of her own, and arguably Torppey's, complaints against the Union. Plaintiff's deposition suggests even that the deposition of Hertzig would not be appropriate here, since Plaintiff "confirmed that she did not have any contact with Hertzig other than Hertzig examining her during an NLRB hearing." Def.'s Opp'n Br. at p. 8 (citing Dep. Tr. of Pl. 160:22-161:11). Even if this Court were to permit the deposition of Hertzig, her knowledge would be limited to the following topics: (1) her investigation of Torppey's claims on behalf of the International, (2) the testimony she gave in *Torppey*, (3) her recollection of Plaintiff's

---

[6] Despite the discovery articulated, Plaintiff asserts that the Union "has provided no discovery" and "delayed this process without reason." Pl.'s Moving Br. at p. 10; Dkt. No. 44 at p. 1. The Union's assertions to the contrary are compelling. The Union attached the Policy for the Court's consideration, which was produced in discovery. *See* Dkt. No. 43-1. Plaintiff admits that she received documents from the Union pertaining to *Torppey*, and also that she has received written discovery from Defendant. Pl.'s Moving Br. at pp. 5-6. The Union's production of over 5,000 pages of documents and timely service of written discovery responses unequivocally demonstrates that the Union has complied with its discovery obligations in this case.

10

testimony in the NLRB Matter, and (3) her knowledge of Plaintiff's complaints against the Union in this case. The same information is readily available to Plaintiff or has already been made available to Plaintiff in discovery. Hence, Hertzig's testimony is neither crucial to Plaintiff's claims nor unique. *See Salomon*, 2022 WL 989317, at *4; *Patrick*, 2024 WL 4404187, at *5, *7.

Regarding Hertzig's knowledge of grievances raised by other members of the Union, Hertzig certifies that she has not acted in an investigatory capacity for *any* Union members' complaints. *See* Certification of Regina C. Hertzig ("Hertzig Cert."), Dkt. No. 43-2. Specifically, Hertzig declares that, since creating the Policy, she "ha[s] never been contacted by a Local 11 union member seeking to complain under the Policy," including Plaintiff. *Id.* ¶ 6. Thus, it is clear that Hertzig could not have served in an investigatory capacity with respect to Plaintiff's, or any other Union members' claims. The *Torppey* matter is the only exception, at which point the Policy was not yet in existence. If Hertzig is aware of grievances raised by other members of the Union, such knowledge would have been obtained through Hertzig's capacity as counsel to the Union and is therefore privileged. In short, Plaintiff has not identified a single piece of unique information that could be obtained from Hertzig that Plaintiff could not have already obtained from the Union, Plaintiff herself, or the public record. *See Patrick*, 2024 WL 4404187, at *5. Accordingly, this factor weighs against granting the motion to compel.

Although briefly touched upon, the Court will next consider the second and third *Shelton* factors—relevance and cruciality. Even if the information sought is relevant, "[t]he relevance element . . . appears to be subsumed by the third ("crucial") prong." *See Salomon*, 2022 WL 989317, at *5. Under the third *Shelton* factor, "'for information to be crucial, it must have some greater importance to the action than merely being relevant.'" *Id.* at *6 (quoting *Ditech Fin. LLC v. SFR Invs. Pool 1, LLC*, No. 14-476, 2016 WL 4370034, at *3 (D. Nev. Aug. 15, 2016)). "'Crucial

11

information includes information necessary for the survival of a claim or defense.'" *Id.* (quoting *Hanover Ins. Co. v. Terra S. Corp.*, No. 18-675, 2019 WL 5963986, at *8 (D. Nev. Nov. 12, 2019)). When the deposition of an adverse attorney is sought, testimony on "central factual issues, rather than peripheral concerns . . . weigh more heavily for the proportionality of the discovery sought." *Johnston*, 130 F.R.D. at 353 (D.N.J. 1990).

Here, the deposition of Hertzig does not appear to implicate core factual issues relevant to any parties' claims or defenses. Plaintiff does not allege that Hertzig is uniquely aware of any information pertaining to her allegedly unfavorable and discriminatory job assignments. What knowledge Hertzig has pertaining to Woodall is otherwise readily available to Plaintiff. Simply because Plaintiff speculates that she may obtain information from Hertzig to support her claims does not open the door an intrusive deposition of the Union's attorney. Hertzig did not "act[] as labor counsel during key developments in the unrest giving rise to this case." *Johnston*, 130 F.R.D. at 355. Although Plaintiff hopes that the deposition of Hertzig would establish "actual and constructive notice of the alleged discriminatory conduct," Plaintiff could more sufficiently attempt to establish notice by deposing representatives of the Union or other members of the Union. Alternatively, Plaintiff might establish notice by using documents and information pertaining to *Torppey*, the NLRB Matter, or the DCR and EEOC Actions.

Turning at last to *Shelton's* cruciality prong, the Court finds that the deposition of Hertzig is likely to be heavily intertwined with either duplicitous information already available to Plaintiff, or privileged or confidential information about Hertzig's representation of the Union in other matters. Thus, the Court determines that a deposition of Hertzig would be disproportionate to Plaintiff's legitimate discovery needs. Accordingly, for the reasons stated, the second and third *Shelton* factors weigh against Plaintiff.

In conclusion, Plaintiff's decision to name Hertzig as a fact witness appears only strategic in nature and "invite[s] delay, disruption, and harassment." *See Horon Holding Corp. v. McKenzie*, 775 A.2d 111, 118 (N.J. Super. Ct. App. Div. 2001) (quotations omitted); *see also Arcuri v. Trump Taj Mahal Assocs.*, 154 F.R.D. 97, 110 (D.N.J. 1994) (denying request to depose opposing counsel where the only information opposing counsel "might have been able to provide . . . is available from [] alternative, duplicate sources: from [the Union representative] himself and from the [Union] members directly"). Here, to allow the deposition of Hertzig would "disrupt the adversarial system, detract from the quality of client representation, [and] have a chilling effect on communications between attorney and client." *Memory Bowl v. North Pointe Ins. Co.*, 280 F.R.D. 181, 186 (D.N.J. 2012) (internal quotations and citations omitted). Having failed to satisfy all three *Shelton* factors, Plaintiff's motion to compel the deposition of Hertzig is **DENIED**.

### IV. CONCLUSION AND ORDER

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this on this 7th day of May, 2025,

**ORDERED** that Plaintiff's motion to compel the deposition of Regina Hertzig, Esq. [Dkt. No. 42], is **DENIED**; and it is further

**ORDERED** that Plaintiff's motion to amend [Dkt. No. 33] is hereby **REINSTATED**; and it is further

**ORDERED** that Defendant shall file its response to Plaintiff's motion to amend [Dkt. No. 33] by **May 19, 2025**; and it is further

**ORDERED** that Plaintiff shall file her reply, if any, by **May 27, 2025**; and it is further

**ORDERED** that Plaintiff's motion to amend [Dkt. No. 33] shall formally be listed as returnable on **June 2, 2025**.

                                                   *s/ James B. Clark, III*
                                                   **JAMES B. CLARK, III**
                                                   **United States Magistrate Judge**